## UNITED STATES  DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**LEONARD E. BLACKBURN**                                **CIVIL ACTION**

**VERSUS**                                              **NO.  14-0177**

**WARDEN HOWARD PRINCE**                                **SECTION "H"(5)**

### REPORT AND RECOMMENDATION

This matter was referred to the undersigned United States Magistrate Judge to conduct a hearing, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. §636(b)(1)(B) and (C), and as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts.  Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing. See 28 U.S.C. § 2254(e)(2).  For the following reasons, **IT IS RECOMMENDED** that the petition for *habeas corpus* relief be **DISMISSED WITH PREJUDICE**.[1]

---

[1]Under 28 U.S.C. § 2254(e)(2), whether to hold an evidentiary hearing is a statutorily mandated determination. Section 2254(e)(2) authorizes the district court to hold an evidentiary hearing only when the petitioner has shown either that the claim relies on a new, retroactive rule of constitutional law that was previously unavailable, 28 U.S.C. § 2254(e)(2)(A)(i), or the claim relies on a factual basis that could not have been previously discovered by the exercise of due diligence, 28 U.S.C. § 2254(e)(2)(A)(ii); and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner.  28 U.S.C. § 2254(e)(2)(B).

## I. Procedural history

Petitioner, Leonard E. Blackburn, is a state prisoner incarcerated in the Elayn Hunt Correctional Center, in St. Gabriel, Louisiana.  On May 22, 2008, a jury found him guilty of one count of possession with intent to distribute cocaine and one count of possession of hydrocodone.[2]   On or about June 7, 2008, Blackburn was sentenced to fifteen years imprisonment at hard labor.[3]   On September 29, 2008, Blackburn pled guilty to a multiple bill of information.  The trial court vacated the original sentence and sentenced him as a fourth-felony offender to twenty years imprisonment on his conviction for possession with intent to distribute cocaine.[4]

Blackburn appealed his conviction and sentence.  He asserted that the evidence was insufficient to convict him of possession with intent to distribute cocaine, and that the trial court erred in failing to impose a determinate sentence when it sentenced him to a single term

---

[2]State Rec., Vol. 1 of 4, Minute entry of May 22, 2008.  *See also* State Rec., Vol. 2 of 4, Trial Transcript (May 22, 2008), p. 118.  Although the bill of information reflects that Blackburn was also charged with possession of marijuana, this count was not submitted to the jury.

[3]State Rec., Vol. 2 of 4, Transcript of sentencing hearing.  While the trial transcript reflects that sentencing was set for June 7, 2008, *see* State Rec., Vol. 2 of 4 (Transcript of Trial - May 22, 2008), p. 118, and the sentencing transcript reflects a date of June 7, 2008, the Court notes inconsistencies in that the minute entry for sentencing as well as other documents (*i.e.*, commitment papers, multiple bill of information) contain reference to sentencing on July 7, 2008.

[4]State Rec., Vol. 2 of 4, Transcript of multiple bill sentencing hearing held September 29, 2008, p. 6; see also State Rec., Vol. 1 of 4, Multiple Offender Bill filed on August 8, 2008.

of fifteen years imprisonment despite the fact that he was convicted on two separate counts. On June 12, 2009, the Louisiana First Circuit Court of Appeal affirmed his conviction and multiple offender sentence for possession with intent to distribute cocaine.  However, the court of appeal remanded the matter to the trial court for imposition of sentence on the possession of hydrocodone conviction.[5]

On remand, the trial court sentenced Blackburn to five years imprisonment at hard labor for possession of hydrocodone, to be served concurrently with the sentence on count one.[6]  The trial court denied his motion for a new trial.

Blackburn appealed this conviction and sentence.  He asserted four claims of error by counseled brief, which included the following:  the trial court erred in imposing an excessive sentence; the trial court erred by failing to comply with the sentencing mandates of Louisiana Code of Criminal Procedure article 894.1; he was denied effective assistance of counsel as a result of counsel's failure to file a motion to reconsider sentence; and the trial court erred in its treatment of the motion for new trial.  By *pro se* brief, he asserted counsel was ineffective in failing to prepare for trial and to investigate the case and either present an adequate defense or request a continuance.  On December 22, 2010, the Louisiana First Circuit affirmed the

---

[5]*State v. Blackburn*, 09–KA–0178, 2009 WL 1655484 (La. App. 1st Cir. 6/12/09) (unpublished). *See also* State Rec., Vol. 3 of 4.

[6]State Rec., Vol. 3 of 4, Transcript of sentencing hearing held January 29, 2010, p. 4.

conviction for possession of hydrocodone.[7] However, the court of appeal vacated the sentence and remanded the matter to the trial court for resentencing, finding that the trial court's imposition of sentence violated Louisiana Code of Criminal Procedure article 873. The Louisiana Supreme Court denied his related supervisory writ application.

On remand, the trial court sentenced Blackburn again to five years imprisonment at hard labor for possession of hydrocodone, to be served concurrently to the sentence imposed on count one.[8]

Blackburn once again appealed the sentence. He raised three counseled and six *pro se* assignments of error. His counseled assignments of error included: the five-year sentence for possession of hydrocodone was excessive; the trial court failed to comply with Louisiana Code of Criminal Procedure article 894.1; and ineffective assistance of counsel in failing to file a motion to reconsider sentence. His six *pro se* assignments of error included challenges to the affidavit of probable cause, denial of the motion to suppress, denial of preliminary examination and prosecutorial misconduct, denial of right of confrontation and cross-examination, withholding evidence of a crime lab report, and inability to prepare an adequate defense due to alterations in the bill of information. The court of appeal noted that all of the *pro se* claims related to convictions that were final, and thus were not subject to review in his appeal related

---

[7]*State v. Blackburn*, 2010-KA-1075, 2010 WL 5487148 (La. App. 1st Cir. 12/22/10) (unpublished), *writ denied*, 10-KH-2509 (La. 11/4/11), 75 So.3d 916.

[8]State Rec., Vol. 3 of 4, Transcript of resentencing held March 31, 2011, pp. 2-3.

4

solely to the resentencing for possession of hydrocodone.  On May 2, 2012, the Louisiana First Circuit affirmed his sentence for possession of hydrocodone.[9]  He did not file a writ application with the Louisiana Supreme Court.

On or about September 20, 2012, Blackburn filed an application for post–conviction relief with the state district court.[10]  In his application, he asserted ineffective assistance of counsel based on counsel's (a) failure to file a motion for continuance to have adequate time to prepare a defense; (b) failure to object to the trial court's denial of his challenge for cause as to a juror; and (c) failure to inform him of the prosecution's plea offer of a twelve-year sentence.  The district court denied that application as untimely and without merit on October 30, 2012.[11]  On November 14, 2012, Blackburn filed with the state district court a notice of intent to seek a supervisory writ of review in the Louisiana First Circuit.  On November 19,

---

[9]*State v. Blackburn*, 2011-KA-1885, 2012 WL 1552115 (La. App. 1st Cir. 5/2/12) (unpublished); *see also* State Rec., Vol. 3 of 4.

[10]State Rec., Vol. 3 of 4, Uniform Application for Post-Conviction Relief signed September 20, 2012.  Federal *habeas* courts must apply Louisiana's "mailbox rule" when determining the filing date of a Louisiana state court filing, and therefore such a document is considered "filed" as of the moment the prisoner "placed it in the prison mail system." *Causey v. Cain*, 450 F.3d 601, 607 (5th Cir. 2006). If that date cannot be gleaned from the state court record with respect to the filings in this case, this Court will simply use the signature date of the applications as the filing date, in that the various applications were obviously placed in the mail no earlier than the date they were signed. In those instances where no signature date appears on a document and no other evidence is available, the Court will look to the file-stamp placed on the document by the clerk of court.

[11]State Rec., Vol. 3 of 4, District Court Judgment denying post-conviction relief signed October 30, 2012.

2012, the district court signed an order setting the return date for December 19, 2012.  On or

about November 19, 2012, Blackburn filed a motion to reconsider his application for post-

conviction relief and a separate motion seeking a stay of the return date until after the district

court ruled on that motion for reconsideration.  On December 7, 2012, the district court denied

Blackburn's motion for reconsideration and ordered a new return date of January 7, 2013 for

filing a supervisory writ application with the Louisiana First Circuit.   On January 14, 2013,

Blackburn submitted his related supervisory writ application to the Louisiana First Circuit.[12]

Blackburn's supervisory writ application to the Louisiana First Circuit Court of Appeal was

denied on March 13, 2013.[13]  His related writ application to the Louisiana Supreme Court was

denied without comment on September 20, 2013.[14]

On January 5, 2014, Blackburn filed his federal application for *habeas corpus* relief.[15] In

his petition, Blackburn asserts that trial counsel rendered ineffective assistance in failing to

---

[12]State Rec., Vol. 4 of 4, Supervisory writ application to Louisiana First Circuit in No. 2013-KW-0105.

[13]State Rec., Vol. 3 of 4, *State v. Blackburn*, 2013-KW-0105 (La. App. 1st Cir. 3/13/13).

[14] *State ex rel. Leonard Blackburn v. State*, 2013-KH-0794 (La. 9/20/13), 123 So.3d 169; *see also* State Rec., Vol. 3 of 4.

[15]  Rec. Doc. No. 1, Petition. "A prisoner's habeas application is considered 'filed' when delivered to the prison authorities for mailing to the district court."  *Roberts v. Cockrell*, 319 F.3d 690, 691 n.2 (5th Cir. 2003). Petitioner signed the petition on January 5, 2014, which is presumed to be the earliest date on which it could have been delivered to prison authorities for mailing.

inform him about the State's offer of a twelve-year sentence. The State argues that the petition is untimely and that Blackburn has failed to exhaust his remedies in the state courts. Alternatively, the State argues that the claim should be denied on the merits.

## *II. Standards of Review*

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") comprehensively overhauled federal *habeas corpus* legislation, including 28 U.S.C. § 2254. Amended subsections 2254(d)(1) and (2) contain revised standards of review for pure questions of fact, pure questions of law, and mixed questions of both. The amendments "modified a federal *habeas* court's role in reviewing state prisoner applications in order to prevent federal *habeas* 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002).

As to pure questions of fact, factual findings are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2); *see also* 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of *habeas corpus* by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.").

As to pure questions of law or mixed questions of law and fact, a federal court must

7

defer to the state court's decision on the merits of such a claim unless that decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). Courts have held that the "'contrary to' and 'unreasonable application' clauses [of § 2254(d)(1)] have independent meaning." *Bell*, 535 U.S. at 694.

Regarding the "contrary to" clause, the United States Fifth Circuit Court of Appeals has explained:

> A state court decision is contrary to clearly established precedent if the state court applies a rule that contradicts the governing law set forth in the [United States] Supreme Court's cases. A state-court decision will also be contrary to clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of the [United States] Supreme Court and nevertheless arrives at a result different from [United States] Supreme Court precedent.

*Wooten v. Thaler*, 598 F.3d 215, 218 (5th Cir.) (internal quotation marks, ellipses, brackets, and footnotes omitted), *cert. denied*, 131 S.Ct. 294 (2010).

Regarding the "unreasonable application" clause, the United States Supreme Court has held:

> [A] state-court decision is an unreasonable application of our clearly established precedent if it correctly identifies the governing legal rule but applies that rule unreasonably to the facts of a particular prisoner's case.

*White v. Woodall*, 134 S.Ct. 1697, 1706 (2014). However, the Supreme Court cautioned:

> Section 2254(d)(1) provides a remedy for instances in which a state court unreasonably applies this Court's precedent; it does not require state courts to extend that precedent or license federal courts to treat the failure to do so as

8

> error. Thus, if a habeas court must extend a rationale before it can apply to the facts at hand, then by definition the rationale was not clearly established at the time of the state-court decision. AEDPA's carefully constructed framework would be undermined if habeas courts introduced rules not clearly established under the guise of extensions to existing law.

*Id.* (citations and quotations marks omitted). The Supreme Court has also warned that "an unreasonable application is different from an incorrect one." *Bell*, 535 U.S. at 694. A state court's merely incorrect application of Supreme Court precedent simply does not warrant *habeas* relief. *Puckett v. Epps*, 641 F.3d 657, 663 (5th Cir.2011) ("Importantly, 'unreasonable' is not the same as 'erroneous' or 'incorrect'; an incorrect application of the law by a state court will nonetheless be affirmed if it is not simultaneously unreasonable.").

While the AEDPA standards of review are strict and narrow, they are purposely so. As the United States Supreme Court has held:

> [E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable. If this standard is difficult to meet, that is because it was meant to be. As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings. It preserves authority to issue the writ in cases where there is *no possibility* fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no farther. Section 2254(d) reflects the view that habeas corpus is a guard against *extreme malfunctions* in the state criminal justice systems, *not a substitute for ordinary error correction through appeal. As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.*

*Harrington v. Richter*, 131 S.Ct. 770, 786–87 (2011) (citations omitted; emphasis added); *see*

*also Renico v. Lett*, 559 U.S. 766, 130 S.Ct. 1855, 1866 (2010) ("AEDPA prevents defendants—and federal courts—from using federal *habeas corpus* review as a vehicle to second-guess the reasonable decisions of state courts.").

### III. Discussion

A.      Statute of Limitations

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), codified at 28 U.S.C. § 2241 *et seq.*, governs the filing date for this action because Blackburn filed his *habeas* petition after the AEDPA's effective date.  *Lindh v. Murphy*, 521 U.S. 320, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997).  The AEDPA includes a one-year period of limitations for *habeas* petitions brought by prisoners challenging state court judgments.  Title 28 U.S.C. § 2244(d) provides, in pertinent part:

(1)     A 1–year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of—

   A.     the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

   B.     the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State actions;

   C.     the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

   D.     the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of

10

due diligence.

Under Section 2244(d)(1)(A), the one-year period commences to run from "the latest of" either the date the petitioner's state judgment became final by conclusion of direct review or the expiration of the time for seeking such review.  *See* 28 U.S.C. § 2244(d)(1)(A) (West 2013), as amended by the AEDPA, P.L. 104–132, 110 Stat. 1220; *see also Roberts v. Cockrell*, 319 F.3d 690 (5th Cir. 2003); *Ott v. Johnson*, 192 F.3d 510 (5th Cir. 1999).  As noted, the Louisiana First Circuit affirmed Blackburn's sentence for possession of hydrocodone on May 2, 2012. Therefore, under §2244(d)(1)(A), his conviction and sentence became "final" no later than June 1, 2012, when his thirty-day period expired for seeking further direct review by filing a writ application with the Louisiana Supreme Court.  *See* Louisiana Supreme Court Rule X, Section 5(a).[16]  Accordingly, his one-year period for seeking federal *habeas corpus* relief commenced on that date and expired one year later on June 3, 2013, unless that deadline was extended by tolling.[17]

---

[16]In cases where "a state prisoner's conviction is affirmed on direct appeal but the sentence is vacated and the case is remanded for resentencing, the judgment of conviction does not become final within the meaning of 28 U.S.C. § 2244(d)(1)(A) until both the conviction and the sentence have become final by the conclusion of direct review or the expiration of the time for seeking such review." *Scott v. Hubert*, 635 F.3d 659, 666 (5th Cir.2011), *cert. denied*, 132 S.Ct. 763 (2011).

[17]Because the "anniversary date" of June 1, 2013, fell on a Saturday, the federal limitations period was extended through the following Monday, June 3, 2013. *See Flanagan v. Johnson*, 154 F.3d 196, 202 (5th Cir.1998) ("We hold that [Fed.R.Civ.P.] 6(a) applies to the computation of the one year limitation period in § 2244(d) of AEDPA."); Fed.R.Civ.P. 6(a) (if the last day of an applicable period is a Saturday, a Sunday, a legal holiday, or a day when the

The Court first considers statutory tolling. The AEDPA provides that the statute of limitations is tolled for the period of time during which a properly filed application for state post-conviction relief or other collateral review attacking a conviction or sentence is pending in state court. 28 U.S.C. § 2244(d)(2). After one hundred ten (110) days elapsed, Blackburn tolled the federal limitations period on September 20, 2012, by filing a post-conviction application with the state district court. Tolling then continued uninterrupted for the duration of the post-conviction proceedings, so long as he sought supervisory review in a timely manner. *Grillette v. Warden, Winn Correctional Center*, 372 F.3d 765, 769–70 (5th Cir.2004).

The state argues that tolling ceased when Blackburn failed to file a timely writ application with the Louisiana First Circuit Court of Appeal after the state district court's judgment on October 30, 2012. Pursuant to Rule 4–3 of the Uniform Rules, Louisiana Courts of Appeal, Blackburn then had, in the absence of an extension of time, thirty (30) days within which to file a timely application for supervisory review before the Louisiana First Circuit. By thereafter filing (on or about November 19, 2012 within the 30–day period) a notice of intent to seek supervisory review in the appellate court, which the trial court subsequently granted by setting a return date of December 19, 2012 (outside the 30–day period), Blackburn effectively sought and obtained an extension of time until the latter date. *See Dixon v. Cain*, 316

---

clerk's office is inaccessible, the period runs until the end of the next day that is not one of those days).

F.3d 553, 554 (5th Cir.2003) (concluding that when a petitioner files a notice of intent to seek supervisory review within the 30–day time period, and the trial court sets a return date outside the 30–day time period, the court has effectively granted the petitioner an extension of time to file his writ application). During that extended 30-day period, on or about December 7, 2012, Blackburn sought and obtained another extension of time until January 7, 2013. Accordingly, given that an application for post-conviction relief remains pending both during the time that it is before the state court for consideration and also during the interval of time after decision when the petitioner is procedurally authorized to proceed to the next level of state court review, *Melancon v. Kaylo,* 259 F.3d 401, 406 (5th Cir. 2001), Blackburn's application remained pending at least until January 7, 2013, the date set by the trial court for filing a timely application for supervisory review in the appellate court.

Blackburn filed his application for supervisory writs with the Louisiana First Circuit on January 14, 2013.  In his attached letter to the court of appeal, he listed extraordinary circumstances that prevented him from meeting the January 7, 2013 return date and requested that the court of appeal consider his writ application as timely filed.

The Louisiana First Circuit did not deny Blackburn's writ application as untimely; instead, the court expressly denied the claims on the merits, holding: "The documents attached to the writ do not demonstrate a reasonable probability the first plea offer would have been entered without the prosecution canceling it or the trial court refusing to accept it. *See Missouri*

*v. Frye*, __ U.S. __, 132 S.Ct. 1399, 1409, 182 L.Ed.2d 379 (2012)."[18]

In *Grillette*, *supra*, the United States Fifth Circuit Court of Appeals faced a similar scenario and found that tolling continued uninterrupted. The Fifth Circuit held:

> [A]t no point did the state trial court or the Louisiana Court of Appeal fault Grillette for failure to comply with Rule 4–3. Whereas in *Melancon*, the Louisiana Court of Appeal expressly indicated that Melancon's application "appeared untimely," in this case it is undisputed that the Louisiana Court of Appeal disposed of Grillette's application "on the merits," without any notation that his application was time-barred. We acknowledge, as the State asserts, that a state court's consideration of an application "on the merits" is not by itself conclusive proof that the application was timely filed in accordance with that state's timeliness laws and rules and thus "pending." *See [ Carey v.] Saffold*, 536 U.S. [214,] 226, 122 S.Ct. 2134 [ (2002)] (noting different reasons why a court might "address the merits of a claim that it believes was presented in an untimely way"). *Rule 4–3, however, prohibits the Court of Appeal from considering the merits of an application that is not filed with the appellate court within the original or extended return date, "in the absence of a showing that the delay in filing was not due to the applicant's fault." Because the Court of Appeal did consider the merits of Grillette's application, it must have determined that the application was timely either because the trial court impliedly extended the return date and/or because the delay was not due to Grillette's fault.*
>
> Moreover, as Grillette correctly points out, when the denial of an application is based on untimeliness, Louisiana courts routinely and unmistakably indicate so in their opinions. *See, e.g., Carter v. Rhea*, 785 So.2d 1022, 1022 (La.Ct.App. 4th Cir.2001) ("WRIT APPLICATION DISMISSED AS UNTIMELY."); *Lawyer v. Succession of Kountz Through Cupit*, 703 So.2d 233, 233 (La.Ct.App. 4th Cir.1997) ("WRIT NOT CONSIDERED."); *Watts v. Dorignac*, 681 So.2d 955, 955 (La.Ct. App. 1st Cir.1996) ("WRIT NOT CONSIDERED"). Thus, had the Louisiana Court of Appeal decided to reach the merits of the application notwithstanding a determination that the application was untimely, it appears that the court would have indicated any such untimeliness in its opinion.

---

[18] State Rec., Vol. 3 of 4, *State v. Blackburn*, 2013 -KW-0105 (La. App. 1st Cir. 3/13/13).

*Grillette*, 372 F.3d at 775 (emphasis added).

Similarly, in this case, the Louisiana First Circuit considered the merits of Blackburn's application and therefore presumably accepted Blackburn's extraordinary circumstances argument and found the delay excusable.  Therefore, the Court will toll the federal limitations period in the instant case from September 20, 2012, the date the post-conviction application was filed, until September 20, 2013, the date the Louisiana Supreme Court denied the related writ application.  At that point, Blackburn had two-hundred fifty-five (255) days of the federal limitations period remaining.   Because he filed his federal application one-hundred eight (108) days later on January 5, 2014, the application is timely.

For this reason, the Court rejects the State's argument that the application should be dismissed as untimely.

B.      *Exhaustion of state court remedies*

The State contends Blackburn has not exhausted the ineffective assistance of counsel claim raised in this federal application.   The State acknowledges that the claim was raised in Blackburn's post-conviction relief application to the district court and related supervisory writ application to the Louisiana First Circuit; however, the State contends in the writ application filed with the Louisiana Supreme Court, Blackburn argued only that he was improperly denied an evidentiary hearing with regard to this claim, and did not present the substance of the underlying claim itself for review on the merits.

"The exhaustion requirement is satisfied when the substance of the federal habeas

15

claim has been fairly presented to the highest state court." *Whitehead v. Johnson*, 157 F.3d 384, 387 (5th Cir.1998) (*citing Picard v. Connor*, 404 U.S. 270, 275–78 (1971)). "State prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process," including discretionary review when that review is part of the State's ordinary appellate review procedures. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999); *accord Duncan v. Walker*, 533 U.S. 167, 177–79 (2001).

"A federal court claim must be the 'substantial equivalent' of one presented to the state courts if it is to satisfy the 'fairly presented' requirement." *Whitehead*, 157 F.3d at 387 (citing *Picard*, 404 U.S. at 275–78). "This requirement is not satisfied if the petitioner presents new legal theories or new factual claims in his federal application." *Id.* (citing *Nobles v. Johnson*, 127 F.3d 409, 420 (5th Cir. 1987)). In addition, it is not enough for a petitioner to raise the claims in the lower state courts, if they were not also specifically presented to the Louisiana Supreme Court. *See Baldwin v. Reese*, 541 U.S. 27, 32 (2004) (a prisoner does not fairly present a claim to a state court if that court must read beyond a petition or brief, such as a lower court opinion, to find the claim).

The State's contention has merit.  After the state district court and Louisiana First Circuit denied his request for post-conviction relief, Blackburn sought review in the Louisiana Supreme Court urging as his sole grounds for relief that the appellate court erred in denying him post-conviction relief without an evidentiary hearing on the ineffective assistance of

16

counsel claim.  Even though his failure to raise the instant substantive post-conviction claim in a procedurally proper manner at each level of the Louisiana courts arguably renders the claim unexhausted, the Court may in its discretion address plainly meritless claims without requiring full exhaustion. 28 U.S.C. § 2254(b)(2).  The Court will therefore review the merits of this claim.

C.     *Merits review - Ineffective assistance of counsel for failing to advise of plea offer*

Blackburn contends defense counsel, Kelvin May, was ineffective in failing to inform him of a twelve-year plea offer by the State.  Shortly after May enrolled as defense counsel, plea discussions took place before the trial judge, and the State agreed to offer Blackburn a twelve-year sentence.  Blackburn was not present at the time.  That same day, May attempted to find Blackburn to convey the State's offer to him.  Before he could talk to Blackburn, however, he received a call that afternoon from the State prosecutor informing him the deal was off the table.  According to the State, the offer was withdrawn because although the trial court was in favor of a twelve-year sentence, the State investigated Blackburn's prior offenses more extensively and was not comfortable with a sentence of less than fifteen years.[19]  The next day,

---

[19]The details of the twelve-year plea offer were gleaned from a review of the discussions that took place during trial and sentencing.  At trial, the State offered Blackburn eighteen years imprisonment and a multiple bill as a second offender in exchange for a guilty plea.  That offer was rejected.  In the context of these discussions, however, the circumstances surrounding the earlier twelve-year plea offer were explained.  State Rec., Vol. 1 of 4, Trial transcript (May 21, 2008), pp. 115-120.  These details were discussed again by defense counsel and the State during the sentencing hearing.  State Rec., Vol. 2 of 4, Transcript of sentencing proceeding held June 7, 2008, pp. 5-8.

defense counsel informed Blackburn that a twelve-year offer had been extended briefly, but withdrawn, and was no longer an option.

Based on the established record, the State offered a twelve-year plea agreement that was not communicated by defense counsel to Blackburn in time for him to accept or reject it, and the State promptly withdrew the plea offer due to information discovered about Blackburn's criminal offense history.  However, Blackburn argues that

> [t]he facts show that the first plea offer would have been entered without the prosecution canceling it or the trial court refusing to except [sic] it.  The facts also demonstrate that there was a very reasonable probability [he] would have accepted the first plea offer due to [his] willingness to negotiate the eighteen (18) year sentence offered by the trial court and prosecution, if counsel had advised [him] of the state's stand on March 15, 2008.  The record shows that on the morning of March 15, 2008, the prosecution and trial court were in agreement of a twelve (12) year plea offer but by afternoon it was canceled.[20]

Under *Strickland v. Washington*, 466 U.S. 668 (1984), a petitioner must satisfy a two-part test to establish ineffective assistance of counsel. First, he must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." 466 U.S. at 687. To be considered ineffective, an attorney's performance must fall below "an objective standard of reasonableness" under "prevailing professional norms." *Id*. at 687–88. "Second, the defendant must show that the deficient performance prejudiced the defense." *Id*. at 687.

---

[20]Rec. Doc. No. 1, Petition, p. 7.

The Supreme Court has held in *Missouri v. Frye*, 132 S.Ct. 1399, 1404–08, 182 L.Ed.2d 379 (2012) and *Lafler v. Cooper*, 132 S.Ct. 1376, 1384, 182 L.Ed.2d 398 (2012), that the Sixth Amendment right to effective assistance of counsel extends to the negotiation and consideration of plea offers that lapse or are rejected. In *Frye*, the Court specifically held that counsel has a "duty to communicate formal offers from the prosecution to accept a plea," and that, in general, where such an offer is not communicated to the defendant, counsel "[does] not render the effective assistance the Constitution requires." 132 S.Ct. at 1408.[21]

In addition to proving that counsel's performance was objectively deficient, a petitioner must also meet his burden under *Strickland's* second prong and prove that counsel's errors actually prejudiced his case. To prove actual prejudice in connection with plea proceedings, a petitioner must demonstrate "that the outcome of the plea process would have been different with competent advice." *Lafler*, 132 S.Ct. at 1384.  Thus, the petitioner must show that (1) "there is a reasonable probability that the plea offer would have been presented to the court (*i.e.*, that the defendant would have accepted the plea **and** the prosecution would not have withdrawn it in light of intervening circumstances)," (2) "that the court would have accepted

---

[21]In *Frye*, the Supreme Court held that defense counsel has a duty to communicate formal offers from the prosecution to accept a plea on terms that may be favorable to the accused, prior to the offer's expiration, and that defense counsel's failure to inform a defendant of a written plea offer before it expired satisfies the deficient performance prong of the standard set forth in *Strickland v. Washington*.  In *Lafler*, the defendant went to trial rather than accept a plea deal as a result of ineffective assistance of counsel during the plea negotiation process. *Lafler*, 132 S.Ct. at 1386.

its terms," and (3) "that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed." *Id.* at 1385 (emphasis added).

In this case, defense counsel attempted, but was unable, to communicate the State's plea offer promptly to Blackburn. Unlike counsel in *Frye*, who made no attempt whatsoever to communicate the formal plea offer to his client during the "offer window" (before the offer expired), the record in this case shows that May diligently tried to communicate the plea offer to Blackburn. *See Frye*, 132 S.Ct. at 1410 ("On this record, it is evident that Frye's attorney did not make a meaningful attempt to inform the defendant of a written plea offer before the offer expired."). Here, May was simply unsuccessful due to circumstances beyond his control.[22] The plea offer was then withdrawn by the State.[23] Thus, petitioner has not established that May's performance was deficient.

Furthermore, to show prejudice from ineffective assistance of counsel during plea

---

[22]In addition to the brief period of time during which the offer was on the table, the evidence shows May also had difficulty locating Blackburn. State Rec., Vol. 2 of 4, Transcript of sentencing, pp. 5-6.

[23]Under Louisiana law, a plea offer is revocable and the State may withdraw that offer if it is not accepted by defendant. *See State v. Givens*, 99–3518, p. 15 (La.1/17/01), 776 So.2d 443, 455–56 (Absent a showing of detrimental reliance prejudicial to the substantial rights of the defendant or evidence of bad faith by the District Attorney's Office, a prosecutor remains free to withdraw from a plea agreement up to the time the plea is entered); *State v. Sullivan*, 49,183 (La. App. 2nd Cir. 8/13/14), 146 So.3d 952, 960; *State v. Hennis*, 98-0664 (La. App. 1st Cir. 2/19/99), 734 So.2d 16, 18.

negotiations, a defendant must "demonstrate a reasonable probability that the plea would have been entered without the prosecution canceling it...." *Missouri v. Frye*, 132 S.Ct. at 1409; *see also Lafler v. Cooper*, 132 S.Ct. at 1385. Here, the State withdrew the plea offer upon more extensive investigation into Blackburn's criminal history. The full extent of his prior criminal offenses was not known to the State or the trial court at the time the twelve-year plea offer was made. Accordingly, even assuming *arguendo* that counsel was ineffective, Blackburn cannot demonstrate prejudice.

For the foregoing reasons, the Court concludes that Blackburn has not shown that the state court decision denying his post-conviction claim "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). Accordingly, under the deferential standards of review mandated by the AEDPA, this Court should deny relief.

## RECOMMENDATION

**IT IS RECOMMENDED** that Leonard E. Blackburn's application for federal *habeas corpus* relief be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such

21

consequences will result from a failure to object. 28 U.S.C. § 636(b)(1); *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir.1996) (*en banc*).[24]

New Orleans, Louisiana, this 25th day of _____November_____, 2014.

_____
**MICHAEL B. NORTH**
**UNITED STATES MAGISTRATE JUDGE**

---

[24]  *Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.